Estep, J.
On the 4th day of April, 1905, Joseph Zelasny leased from John Staffeld 86 2-3 acres of land, situated in the township of Warrensville, county of Cuyahoga and state of Ohio. Said lease was for the term of ten years, and contained an option providing that Staffeld would sell said property to the said Zelasny at the price of $150 per acre, at any time within five years from the beginning of said term of ten years.
On the 30th day of June, 1909, about ten months before the expiration of said option, the said Zelasny signed an agreement in writing as follows:
“South Euclid, Ohio, June 30, 1909.
“As I, Joseph Zelasny, occupy under lease 86 2-3 acres in lot 10 in North Warrensville, Cuyahoga county, Ohio, owned by John Staffeld, and as I now have an option on said 86 2-3 acres of land given by said Staffeld to me which expires April 4, 1910, to purchase said farm for the sum of $150 per aere, I hereby assign to O. P. Mcllrath a one-half interest in said option, Mcllrath to push the sale of said farm, pay all the expenses for advertising, and when sold said Zelasny and said Mcllrath sba.11 divide equally between them the profit derived from the sale of said farm.
“ (Signed) Joseph Zelasny.”
During the trial the defendant, Zelasny, was permitted to file an amended answer, in which he prayed that said agreement be set aside on the ground that it was procured by fraudulent representations on the part of said McIlrath. The said fraudulent representations consisted in puffing himself in so far as his financial standing was concerned. These. representations are denied by the said McIlrath, and I am not able to say that they were made. In coming to this conclusion I have considered the fact, that between the time of the making of said agreement and the time of filing the amended answer no claim, according to all the proof in the case, was ever made by Zelasny that the agree- *540 meat or assignment bad been obtained from him by any fraud on the part of the said McIlrath.
After the execution of the agreement of June 30, 1909, the said McIlrath began to advertise the property in the Cleveland papers, and took persons out to view the premises. He testifies that be received an offer of $175 per acre from one Fred Goakes, and after advising Zelasny of this offer they agreed that the farm ought to bring $200 an acre, and the bid of Goakes was rejected.
It further appears from tbe evidence that on or about the middle of November, 1909; Mcllratb negotiated a sale of said farm to one T. A. Lamb. Clifford A. Fuller acted for tbe said Lamb, and agreed to buy said farm for tbe sum of $200 per acre, paying $5 on said purchase price and taking a receipt therefor. Tbe said Fuller testified that if said Lamb did not take said property, be was willing to take it himself at tbe price of $200 per acre, as that, at tbe time be dealt with Mcllratb, was tbe fair value of said property.
On the 16th day of November, 1909, McIlrath wrote Zelasny that he bad sold said farm to Lamb for the price of $200 per acre., and requested him to call at his office. Zelasny not coming to bis office in response to said letter, McIlrath sent bis son and J. A. "Wilson out to see him. Afterwards Zelasny called on McIlrath, and told McIlrath that be had better bold up the sale for a few days, as be, Zelasny, bad a man at Chagrin Falls who might buy at $210 per acre. At the time of the talk it appears from evidence that Zelasny bad given to one Frank C. Newcomer an option on said land at $175 per acre; that said option was dated on tbe 27th day of September, 1909, and was to expire December 1, 1909; that the same was extended November 29, 1909, until April 4, 1910; and that on April 4, 1910, the said Newcomer elected to exercise the option and tendered Zelasny $15,166.66 in payment for said premises. The fact that Zelasny had given said option to Newcomer was concealed from said McIlrath until about November 23, 1909, at which time McIlrath placed bis agreement with Zelasny on record. Newcomer at that time had knowledge of said agreement.
*541 There is a claim made on the part of Zelasny that W. A. McIlrath, a brother of O. P. McIlrath, who had something to do with procuring the said T. A. Lamb as a purchaser, wanted him to divide the profits into three parts, which he refused to do. He also claims that the said O. P. McIlrath wanted the same thing done. The McIlraths vigorously deny this. I am not satisfied that such demand as this was made on Zelasny. When we consider that at this time Zelasny had given an option to Newcomer, and was concealing this most important fact from McIlrath while he continued to recognize McIlrath’s rights under the agreement of June 30, 1909, I am not inclined to give much weight to his testimony on this subject.
There are technical legal objections to carrying out the agreement between Mcllrath and Lamb or Mcllrath and Puller, and specific performance of this purchase can not be enforced. I have considered these matters, however, as bearing upon the ef- . forts made on. the part of Mcllrath to carry out his part of said agreement in good faith. I am satisfied that if Zelasny had not made the agreement with Newcomer to sell the property for $175 per acre, Mcllrath could have sold.it for $200 per acre, and thereby doubled their profits.
Upon all the proof in this case, I have reached the following conclusions:
1. The contract of June 30, 1909, in my opinion, conveyed to O. P. Mcllrath a one-half interest in the option owned by Zelasny relating to the right to purchase the 86 2-3 acres of land described in the lease between Zelasny and Staffeld; and that Mcllrath, having performed the consideration mentioned in said agreement, is entitled to one-half of the profits derived from the sale of said land, and that he is entitled to the one-half of said profit whether the land was sold by himself or Zelasny.
2. The contract made between Mcllrath and T. A. Lamb with Puller, his agent, or the offer of Fuller to buy said land at the price of $200 per acre, can not be specifically enforced.
3. There are no reasons existing to prevent a decree ordering Staffeld to convey the said premises to Zelasny, on payment to Staffeld of $13,000.
*542 4. Frank C. Newcomer is a party defendant to these proceedings', and has filed an answer. His contract with Zelasny of September 27, 1909, is in evidence, and his willingness and ability to take the property are shown. O. P. McIlrath is asking that this agreement, if the court finds it is the only one which can be carried out, be.specifically enforced. Can this be done?
In the case of Coffinberry v. Oil Company, 68 O. S., at page 497, Price, J., says:
"It is a familiar rule for which we have numerous precedents, that the ordering of specific performance is in some measure within the sound discretion of the court when it is asked; and there are many cases which disclose circumstances of inequality and hardship or other considerations which lead to a refusal of the specific relief, and yet adequate justice is done in some other form in the same case, in order to avoid other actions and settle the rights of the parties.” * * *
In the case of City of Tiffin v. Shawan, 43 O. S., 178, the second syllabus is as follows:
"If a contract for the purchase and conveyance of land is in all respects fair and free from ambiguity, and its enforcement, as against the purchaser, will vest in him a marketable title, the court has no legal discretion to refuse its enforcement.”
The general doctrine, however, is laid down on page 183, where Owen, J., says:
"The duty of a court to decree specific performance of a contract can not be determined by any iron rule, but depends upon the peculiar facts and equitable considerations of each case, and rests in the sound discretion of the court, guided and regulated, so far as may be, in the exercise of that discretion, by precedent and established practice.”
See also Brock v. Hidy et al, 13 O. S., 306; Port Clinton R. R. Co. v. C. & T. T. T. Co., 13 O. S., 549.
From the authorities above cited, I am of the opinion that a decree of specific performance, on the prayer of the plaintiff, O. P. McIlrath, can be made in carrying out the contract of September 27, 1909, between Frank C. Newcomer and Joseph Zelasny.
*543 I therefore, conclude, that O. P. Mellrath is the owner of one-half of the option purchased by him from Zelasny on June 30, 1909; that the defendant Staffeld should be ordered to convey the said premises to Zelasny upon payment to him by the said Zelasny of the sum of $13,000, that Zelasny, on receipt of $13,000 paid to him by the said Newcomer, be ordered to convey the said premises to the said Newcomer; and that said Newcomer, out of the balance in his hands due upon said purchase' price, to-wit, the sum of $2,166,66, pay the court costs incurred in this litigation, and divide the remainder between the said O. P. Mellrath and Joseph Zelasny equally.
Staffeld having refused to accept the $13,000 tendered him, I am of the opinion that he is not entitled to interest on said sum. Newcomer being willing to perform at all times, I am of the opinion that he should not be compelled to pay interest on his tender.